3-0-9-0-0-0-6, Illinois Department of Labor, Sunni-Galway v. Sackville Construction, Appalachian-Stanley-Newton Good morning, Your Honors. May it please the Court. My name is Sunil Balwe, and I am an Illinois Assistant Attorney General here on behalf of the Illinois Department of Labor. The Circuit Court's grant of summary judgment to Sackville Construction, the defendant, Appalachian in this case, should be reversed because Sackville is a subcontractor of a public works project that is subject to the terms of the Prevailing Wage Act. As such, it owes its laborers under Sections 3, 4, and 11 of the Prevailing Wages. Its failure to pay Prevailing Wages now makes it liable for payment of back wages along with interest and penalties. Two issues are raised in this appeal. First, whether Rock Island Industrial Partners were informally ripped, as we've referred to them in the briefs, is a statutory public body under Section 2 of the Prevailing Wage Act because it received public funds, taxpayer money, to finance the construction project in this case, which is an industrial building in Rock Island, Illinois. If RIP is a public body, then we have a fixed work constructed by a public body, and under Section 2 of the Act, that equals a public work, which triggers the obligation to pay Prevailing Wages by all contractors and subcontractors under RIP. The second issue in this case involves Sackville's claim that it is not liable for payment of Prevailing Wages because it did not have actual notice. It purports to lack actual notice that the terms of the Prevailing Wage Act apply. And that is what the Circuit Court granted summary judgment on in this case. We, of course, argue that actual notice or notice of any kind is not a condition precedent to payment of Prevailing Wages as the legislature has never expressly provided for that condition. Turning back to the first issue, RIP is a statutory public body because under Section 2, it is an institution supported in whole or in part, and here it is supported in part by public funds, taxpayer money. Specifically, 10% of the entire construction project's cost, which was $150,000, and also the conveyance of public land for the nominal value of $1. Under Section 2 of the Act, the Prevailing Wage Act, the scheme provides for at least three types of public bodies. One is your traditional governmental bodies, your school districts, county boards, board of commissioners. The statute also says that any institution supported in whole or in part by public funds constitutes a public body. Now, one type of public body under that language is the private entities that were at issue in the cases such as Opportunity Center of Southeastern Illinois and Illini Community Hospital, where the private entities receive the regular funding, regular receipt of public funding. Another type of public body is what RIP is in this case, and that's what Attorney General Jim Ryan opined about in his advisory opinion, 2000, number 18, that when a private entity receives even a one-time grant of public funds, and that is the key fact, taxpayer money, when taxpayer money is used to construct a fixed work project, that private entity is transformed into a public body for purposes of the project. Now, this has been the Department of Labor's interpretation of the Act for at least since 2000, since the Attorney General's advisory opinion, and it is a well-settled rule of law that where an administrative agency administers an act, its interpretation should be afforded deference so long as the interpretation is reasonable, and we believe that this interpretation is reasonable. Sackville's argument that an institution must have public characteristics is too narrow of an interpretation of that language because interpreting it so narrowly thwarts the broad purposes that the legislature had in mind in enacting the Prevailing Wage Act. Certainly when taxpayer money is at issue, the legislature has at least two interests in mind that the case is discussed. One is to provide workers with a fair, honest, decent living wage because taxpayer money is being used. The state has an interest in protecting the workers that reside in the state of Illinois. And the second interest, also by mandating a prevailing wage, it removes the incentive from contractors and subcontractors to import from out-of-state cheaper labor and gives the contractors and subcontractors an incentive by requiring them to pay prevailing wages to hire workers in the locality of where the project is being constructed. We believe this interpretation is supported by Public Act 9658, and I know there have been a series of rounds of briefings in this case. Public Act 9658 concerns the first round of supplemental briefing that we did in this case. Public Act 9658 now explicitly says that whenever any public money is used to finance a fixed-work project, the terms of the Prevailing Wage Act apply, and contractors and subcontractors owe prevailing wages. In fact, Sackville concedes that point, and it's undisputed that under the Act today, the Prevailing Wage Act applies. Now, we contend that that was a clarification of existing law. That is exactly what Attorney General Jim Ryan had opined about in 2000. More evidence that Public Act 9658 is a clarification of existing law is from the legislative debates that we've appended to our first supplemental brief. The legislators there speak in terms of this will provide clarity for contractors and subcontractors because there is some confusion under the language of the Act whether or not the situation in this type of case applies to the Prevailing Wage Act. And certainly, this is an issue of first impression for the courts, and there are no published decisions where a private entity that does not have public characteristics, that's undisputed, but receives public funding for a particular project, and that is the key fact that triggers the Prevailing Wage Act. Turning to the second issue, the Circuit Court granted summary judgment here on the basis that Sackville did not have actual notice that the Prevailing Wage Act applies, and now Sackville adopts that argument on appeal. But both the Circuit Court and Sackville's arguments and analysis violate a cardinal rule of statutory interpretation. That analysis that notice is a conditioned precedent imports into the statute an exception or a condition or a limitation that the legislature has not otherwise provided for expressly. And where the legislature does not provide for a condition, one should not be read into the statute. And in fact, holding that notice is not a conditioned precedent is directly on point with this court's recent decision in 2007 in the Brandt Construction Company case. In that case, a contractor claimed that he did not have actual notice that the prevailing wage rate had been revised, and this court held that actual notice is not a conditioned precedent. In fact, importing notice into a statute when the legislature has not provided for that expressly is totally impermissible. And so we urge the court to follow Brandt Construction Company and apply it to this case and hold that actual notice is not a conditioned precedent. And again, Public Act 96-437, which was the topic of the second round of supplemental briefing, reaffirms this principle. It states now explicitly that actual notice does not apply. But all that Public Act 96-437 does is it reaffirms what the old law was. Because under the prior version of the Act, at the time of the project in this case, nowhere in the language of the statute was notice a conditioned precedent. Your Honors, if there are no questions, we do respectfully request that the judgment of the circuit court be reversed. We do ask for a remand to the circuit court for calculation of damages. Thank you. Thank you, Counsel. Counsel. You may please the court. My name is Stanley New, and I represent Sackville Construction in this matter. A couple of corrections to the statements of the Attorney General's office. First of all, the Attorney General said that as a fact that all the construction was financed by the money given by the City of Rock Island, which is incorrect. The Attorney General further stated that 10% of the construction costs are to be paid for by the money allocated. When reading the agreement, what it says is that the money can be used for any of the following. Site development, planning, engineering, marketing, professional fees, mortgage, interest, labor, and construction. The next thing is Attorney General's office cited the Brandt case, which was my case. And the Brandt case was a two-pronged case. The second prong was misstated. The second prong of that case is if the contractor who's required to pay prevailing wages does not receive actual notice from the city that the rate has changed, then that contractor will not be liable for interest, liquidated damages, and other penalties. Justices, I'd like you to focus on the facts. In this case, the trial judge said you didn't have to pay the prevailing wage. Pardon? Did the trial judge say you didn't have to pay the prevailing wage? No, the trial judge did not say that. The trial judge in this case. Oh. In this case. I believe the trial judge didn't address that issue. I think what the trial judge said, there were public funds involved. That's my recollection when I was there. The facts of this case in this sequence occur. Hybrid Construction, the general contractor, enters into a contract with Rock Island Industrial Partners to build a manufacturing plant. Next, what Rock Island Partners did is they got a letter of intent to lease the building from Norcross. The third step was ten days later, Rock Island Industrial Partners enters into a contract with the city for the development of this project. Subsequently, Hybrant hires my client, Sackville, to do some laboring on the job. What is unique about this case also is none of the contracts involved in this case, the contract with the city, the contract with Brant and Rock Island, the contract between Hybrant and Sackville, contained a prevailing wage provision. And the answer is real simple. There is no one under the statute believed that this is a prevailing wage job. The attorney general also relies on AG opinions. And as this body well knows, it is AG opinions at best are advisory. And in one of the cases cited, which again was the case I had, Sparks and Weevil, Judge Myerscough, then the trial judge, specifically ruled that the AG opinion is not valid because it was contrary to the statute. The cases that the state relies on or the Department of Labor relies on are People v. Illini and the Opportunity Center v. Bernardi. In Illini, which is easily distinguished, Illini received tax money for many, many years. The court in Illini quotes section two of the public body definition and puts it in italics, the following statement, or any institution supported in whole or in part by public funds. Emphasis added. The court again, throughout the opinion, repeats this same phrase. The court focused in on what is an institution. The court's, part of its ruling was that the hospital was an institution. One of the important facts of that case is that the hospital received taxes from an act for public non-secretarian hospitals. It was a public service body. In Opportunity Center, again, the purpose of the Opportunity Center was to provide social educational rehabilitation programs for handicapped and disabled. Again, a public body, I apologize, a public service which is provided through tax money. The court again focused, this court in Opportunity Center, again focused on the term institution. The court said briefly that if you provide public services and you got taxpayer money, it was an institution. Both Illini and Opportunity Centers are entities that are public institutions and provide public services in exchange for public funding. In this case, there is no fact which is similar. A case called Zucker versus Bowling, which is cited by both parties. This was a contract to build a warehouse, which is very similar to the facts in our case. Our case was to build a manufacturing facility. The court in Zucker had a different statute, but the analysis that the court did in its holding is applicable to this case. Court in its last concluding paragraph said the actual contracting and construction of the warehouse is done by a private industry, not by a public body. The public body is no more than the financing conduit. That's exactly what we have in this case. I submit to the court that the Zucker court would have reached the same decision under the statute that was in effect at the time that this case was decided by the trial court. We then go to what took place since this appeal started. There were two changes to the prevailing Wayne statute, and there was an intervening case in the fourth district, which has direct application. The first change was Public Act 9658, and what it did is it unmistakably revealed that the project is not covered. It added words such as bonds, grants, loads, and other funds made available by or to the state. And then it said, but not including, I'm sorry, Your Honor, but not limited to when looking at the enumerated statutes. The public act made it clear that this was not a clarification, but it was a vast expansion of the act. Attorney General cites Representative Miller's statement that it's a clarification, but at page 13 of the transcript of the proceeding, Representative Miller says the Department of Labor says it's a clarification. The Attorney General says that, not necessarily the legislature. Representatives Eddy, Tyrone, and Rios all state this is an expansion of the prevailing wage act. Now we go to the Hafner case, the City of Normal versus Hafner. This case was decided after the appeal in this case was brought. Now what we have here is Normal enters into an agreement with Hafner to develop residential properties. Hafner has agreed to spend close to a million and a half dollars. They took out some mortgages, and in turn, the tax increment money that came in afterwards will be used to pay the interest that Hafner had on its loans. This court, under the rules of statutory construction, opined that if a project, if there are projects or types of acts which are included under the coverage of the prevailing wage act, then by not listing an act, it is excluded. The court specifically held that the Hafners are not a public body, not an institution, and the project is not a public work by nature of the work, i.e. construction of homes. Court further opined that if Hafners were required to pay prevailing wages, then all private developments would be required to pay prevailing wages when receiving any benefit of the act. The IMDOL's position also is that Normal did not advance any funds to Hafners. I agree they did not. But in our case, the case so far, there was no money advanced either. There was a $75,000 payment to be made by the City of Rock Island at the time the project was permitted, and a second payment when the project was complete, occupancy. Again, this court focused on the rules of interpretation. If you list a series of acts which would fall under the coverage, all others are excluded. In summary, Rock Island also agreed to give money as an incentive, as in the Hafner case. The Hafners did receive public funds, as in this particular case. The Hafner agreement's purpose is to alleviate the cost of redevelopment. In the agreement between Rock Island Partners and the City, the stated reason was to use a building which will create jobs and keep further jobs. Same purpose. The nature of the construction is the same. Residential, manufacturing. Nothing to do with the public. Your Honors, I submit that the trial court does not be reversed. I believe the trial court reached the right decision, but maybe for the wrong reasons. That concludes my argument. Do we know what happened to the money? I know you said what could happen to the money, but where did the money go once it was delivered to us? I do not know. That was never asked in any deposition. So is summary judgment appropriate if we don't know what happened to the money? I don't think that's an issue. It's a question of whether or not it is an institution, R-I-P-P, R-I-P. It's easier to say R. And I submit to the court that under a strange definition of institution, that private entity is not one. Institution to me, a school, a hospital, the opportunity center. I don't believe any other definition would apply. How much money was delivered? Was it $150,000 to installments of $75,000? $75,000 and $75,000. The second installment was in litigation. I don't know the result of that litigation. I know at the time of this, I believe at the time of this appeal, it was not resolved. It was in the Rock Island Circuit Court. So we know the first $75,000 was delivered? The first $75,000 was delivered. I do not know if the second $75,000 was ever delivered. So if $75,000 sent somebody to Cancun for a year, it didn't go into the project, construction project. But if it went into the construction project, you're still saying it doesn't apply? I'm saying that the money went to defray costs of one of those enumerated things. Engineering, mortgage interest. Aren't those all really part of the construction? Except maybe whatever it was out of the market. But all of those things are part of the construction. I submit to you, Justice, that that's not in reality what happens. The typical lender, in my experience, the lender packages two loans. One loan is for the development of the property. And then there's a second loan for the construction of the property. And under that analysis, the money could have been used anywhere along that process or all of it before the construction began. What's development? Pardon? How do you define development? Development is you hire a planner to determine whether the best use for the property. You hire an architectural engineering firm to do a preliminary study as to what can go on a particular parcel of land. And it goes into whether or not there are any entities, banks, lenders who are willing to put money in their project. It's the feasibility of the project. That's the development stage. Thank you, Counsel. Thank you, Your Honors. May I please have the Court? Let me start by addressing Justice Wright and Justice Leighton's concerns regarding the payment of funds for purposes of the project. And this will also rebut Sackville's assertion that we have miscited something to the Court. $75,000, the second installment, under the terms of the contract, would be made payable to Sackville only upon completion of the construction project. The money here is directly tied to the construction project. And as you pointed out, Your Honor, that everything about the financing and the development, that's all tied into the construction project. In fact, the City says that they wish to support the developer in this project, the construction of the industrial building. So how are you answering the question Judge Leighton asked with regard to the difference between construction and development costs? We believe it's all tied into construction costs. Development costs are part of construction costs.  And the City supports Sackville in constructing the building by providing them with financial advancement of money. Also, Enos Higgins is a labor conciliator for the Department of Labor. In his deposition testimony, which is at record page C88, he states that it's his understanding that the money was to be used solely for the purposes of construction, for the end result of building this industrial building. And we're here on a grant of summary judgment to Sackville. So if anything, the record needs to be read in a light most favorable to the Department of Labor. And there is specific testimony on page C88 to support our assertion of fact. Going to Sackville's argument regarding the Brandt case, that's correct. In Brandt, the court did hold that interest and penalties or penalties do not apply where a contractor did not have notice. What we are arguing is, first, that Brandt did hold that payment of back wages is still required regardless of notice. And it's interesting that Sackville now says that the circuit court perhaps granted summary judgment on an incorrect basis. On page C133 of the record, it's perfectly clear. The circuit court granted summary judgment on the notice issue. It said it's inequitable to hold a subcontractor liable if they did not have notice. And that's what Sackville refers to when it argues that none of the contracts in this case referred to payment of prevailing wages. But that has to do with notice. There is no language in the original act. And as Sackville now seems to concede that the trial court was incorrect in holding that notice was a conditioned precedent, it's irrelevant whether the contracts at issue had language purporting to claim that prevailing wages applied. And in fact, the purpose of the act has to be the central focus. The purpose of the act is to protect the workers and the laborers, not contractors and subcontractors. Certainly, it is a noble goal to bring business into the local communities of the state of Illinois. But as Representative Miller mentioned in the public act debate, it is also a very real goal and very real interest to protect the workers who engage in construction projects. And the legislature has determined here in a cost-benefit analysis that protecting the workers is the primary goal of the prevailing wage act. I'd also like to talk about the Zicker decision. Zicker really has no bearing on this case. Zicker was interpreting a prior version of the prevailing wage act. And it focused on the public use element, that the construction project has to serve a public use for the terms of the prevailing wage act to apply. In 2003, that language was explicitly deleted from the statute. Let me turn back to the Brant decision just for one minute. We agree that Brant does say that interest and penalties should not apply. We do contend, however, with Justice Wright's dissenting opinion that a strict interpretation of section 11 of the act does require penalties. The laborers in the department, these two entities should not be punished because Sackville did not research this case. And that's what this comes down to. Sackville claims it did not have notice that the prevailing wage act applied. But Sackville could have taken the time to call Highbrand, the contractor above it, or call RIT and figure out what are the facts of this case. The burden, the onus of discovering whether the prevailing wage act applies should be on the contractors and subcontractors, not on the laborers who are usually men or women of average skill. What about the issue of the institution? Right. And we argue that institutions should be given a broad definition in order to serve the broad purposes of the prevailing wage act. Under Sackville's argument, suppose this construction project was funded 100% with public money. All of it was funded by tax money. But one of the enumerated statutes was not employed, as it wasn't in this case. Sackville would still contend that the prevailing wage act doesn't apply. And to us, we believe that the legislature has a clear interest to put forth when its people's, its residents' tax money is being used to fund a construction project. So we argue that institutions should be given a broad definition to fulfill the broad purposes of the act. Just one more comment about the Hafner case. I'll distinguish that on two facts. First, there was no advancement of public funds in the Hafner case. The court states that explicitly. Here there was an advancement of $150,000 in land. And secondly, the court there also focuses on the TIF Act, the Tax Increment Reallocation Act. It's another type of funding mechanism to support development. And in that case, the court looked at House Bill 3369 at the time of amendments to the prevailing wage act. And there they say explicitly that the House rejected including the TIF Act as one of the ways to transform a project into a public works project through that funding mechanism. So the TIF Act, that specific act was very relevant to the court's decision, which we don't have the TIF Act here, and we do have advancement of public funds. So Hafner also does not support Sackville's argument. If there are no questions, we again ask for reversal of the circuit court's judgment and a remand to the circuit court to calculate damages. On the penalty, excuse me, on the penalties. Well, let me look at this. On the substantive issue of the prevailing wage. Your position is that the legislative amendments were. Got the word. Well, we contended there was a clarification of this. There was a clarification. And but the the the penalty provisions were not. Right. We didn't. That was a change in the law. And that was right. And our argument is that it speaks to that. But it doesn't. Right. Our argument is interpreting the prior version of the act. While we argue the same analysis that Justice Wright stated in her dissent in Brandt, that a strict interpretation of the act requires penalties. We think that the legislature took Justice Wright's opinion and changed the law. And that change should apply only prospectively, not retroactively. And I don't think Sackville's made any argument that that change should apply retroactively. Thank you. Thank you, Counsel. The court will take this case under advisory.